# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
### TALLAHASSEE DIVISION

**VALARIE JOINER,**                                    **CASE NO.**

     **Plaintiff,**

**v.**

**DAVID P. STEINER,**
**POSTMASTER GENERAL,**

     **Defendant.**

_____/

## COMPLAINT

Plaintiff, VALARIE JOINER, hereby sues Defendant, DAVID P. STEINER,

POSTMASTER GENERAL, and alleges:

## JURISDICTION

1.      This is an action brought under Title VI of the Civil Rights Act of 1964,

codified at 42 U.S.C. §2000e et seq. and under 42 U.S.C. §1981. Jurisdiction of this

Court is invoked pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 28

U.S.C. § 1343 (civil rights claim jurisdiction).

2.      This is an action involving claims which are, individually, in excess of

Seventy-Five Thousand Dollars.

## THE PARTIES

3.     At all times pertinent hereto, Plaintiff, VALARIE JOINER, has been a resident of the State of Florida and employed by Defendant.  Plaintiff is a member of a protected class because of her gender and because she reported unlawful employment practices and has been retaliated against thereafter.

4.     At all times pertinent hereto, Defendant, DAVID P. STEINER, POSTMASTER GENERAL, has been organized and existing under the laws of the United States.  At all times pertinent to this action, Defendant has been an "employer" as that term is used under the applicable laws identified above. Defendant is Plaintiff's employer as it relates to these claims.

## CONDITIONS PRECEDENT

5.     Plaintiff has satisfied all conditions precedent to bringing this action.

## STATEMENT OF THE ULTIMATE FACTS

6.     Plaintiff, a female, began her employment with Defendant on April 30, 2016, and, at all times pertinent to this action, has worked as a City Carrier at Defendant's Lake Jackson Station in Tallahassee, Florida until her wrongful termination on April 11, 2025. Upon filing a grievance, Plaintiff's employment was reinstated by Defendant on May 21, 2025, and she currently remains employed as a City Carrier.

7.     Plaintiff is a loyal and dedicated employee.

8.      Despite her stellar work performance during her employment with Defendant, Plaintiff has been subjected to disparate treatment, different terms and conditions of employment, was held to a different standard because of her gender, and has been retaliated against after reporting this discrimination.

9.      The disparate treatment and retaliation came at the hands of specifically but not limited to Station Manager Tamika Thompson-Ali, a female, and Local Postmaster Vanessa Cobb, a female.

10.     In or around the end of October 2024, Plaintiff was absent from work with Covid-19 for several days and she provided documentation of this to Thompson-Ali. Despite having documentation of Plaintiff's illness, Thompson-Ali input Plaintiff's time off as "Absent Without Official Leave" rather than "Sick Leave." This misclassification subjected Plaintiff to unwarranted discipline and scrutiny. In response, Plaintiff filed an informal complaint against Thompson-Ali with Defendant's Equal Employment Opportunity (EEO) Department on November 4, 2024, and that case was settled in Plaintiff's favor on or around December 17, 2024.

11.     Thompson-Ali began to single out Plaintiff and harass her after the resolution of her prior EEO complaint. This conduct began almost immediately after Plaintiff engaged in protected activity, demonstrating a clear temporal connection between Plaintiff's complaint and the retaliatory actions. By way of example, in

3

January 2025, Thompson-Ali told Union Steward Jessica McCarthy, a female, that Plaintiff needed to "tread lightly." Additionally, in March 2025, Thompson-Ali approached Plaintiff's car while Plaintiff was sitting in the driver's seat on her break and banged on the car window, then aggressively stated that Plaintiff was not permitted to take a break and that she needed to "get back to work." This behavior was intimidating, unwarranted, and in retaliation for Plaintiff's protected activity.

12.     On February 3, 2025, around 11:00 a.m., Plaintiff was asked by Carrier Technician Gilbert Robinson, a male, to move his personal car to the customer parking lot. Robinson informed Plaintiff that he was having car trouble, and that his dad was supposed to pick up his car to take it to be serviced. During this conversation, Thompson-Ali approached and instructed Robinson to go back inside the building. After having a brief discussion with Thompson-Ali, Robinson requested to borrow Plaintiff's personal cell phone so he could speak with Union Vice President Teresa Boyd, a female. Plaintiff agreed, handed Robinson her phone, then initiated her ten-minute morning break and moved Robinson's car for him. Plaintiff's actions were brief, reasonable, and consistent with workplace norms.

13.     After Plaintiff moved the car, Plaintiff walked back to her Long Life Vehicle (LLV) where Thompson-Ali and Robinson were located by the rear driver side of the vehicle. Thompson-Ali then instructed Plaintiff to depart for her route. Since Robinson was using Plaintiff's cell phone, Plaintiff informed him she had to

leave, then Robinson concluded his call and returned the cell phone to Plaintiff. Plaintiff departed on her route immediately thereafter without incident. At this time, Plaintiff was unaware of the investigation that Robinson was undergoing. Plaintiff contends that she did not fail to follow instructions because she retrieved her personal phone and departed as she was told. Plaintiff complied with all supervisory instructions and did not interfere with any investigation, known or unknown to her at the time.

14.     On March 3, 2025, Plaintiff was interviewed by Thompson-Ali about the events of February 3, 2025. In the interview, Plaintiff recounted her actions and the situation to the best of her knowledge. During this interview, Thompson-Ali informed Plaintiff that Robinson had been under investigation that day for suspicion of being under the influence of alcohol. Plaintiff asserted that she had no knowledge of that investigation. Despite Plaintiff's cooperation and lack of knowledge, Defendant later used this incident as a pretext for termination.

15.     On March 10, 2025, after working her shift, Plaintiff received a Notice of Removal from her immediate supervisor, Customer Service Supervisor Deborah Hall, claiming that Plaintiff had failed to follow instructions, interfered with a postal investigation, and failed to remain gainfully employed. These allegations were false and unsupported by facts. This Notice stated that Plaintiff's last day of employment would be April 11, 2025. The Notice of Removal had been initiated by Thompson-

Ali and approved by Cobb. This decision represented an unusually harsh disciplinary response compared to discipline imposed on male employees.

16.    The following day, on March 11, 2025, Plaintiff filed a grievance to appeal her termination. This grievance was not settled at the local level and was instead escalated to pre-arbitration by Thompson-Ali and Cobb. The decision to escalate Plaintiff's grievance deprived her of the opportunity to resolve the matter locally, unlike similarly situated male employees. The grievance was not settled before the termination date on Plaintiff's Notice of Removal, so on April 11, 2025, Plaintiff was terminated while the grievance was still in pre-arbitration. This termination occurred despite the pending grievance and constituted an adverse employment action.

17.    Plaintiff was treated less favorably than similarly situated employees outside her protected class, as evidenced by Thompson-Ali's reduced disciplinary actions for male employees who had improper conduct and/or failed to follow instructions. By way of example, City Carrier Chris Gozier, a male, and City Carrier f/n/u Abdullahi, a male, both received Notices of Removal in or around May 2025 for failure to follow instructions, the same charge as Plaintiff. However, when both males submitted their grievances, the grievances were settled at the local level before their scheduled termination date, and they were never truly terminated. Plaintiff did

6

not receive the same leniency or procedural protections afforded to these male employees.

18.    Additionally, City Carrier Derrick Jackson, a male, was issued a Letter of Warning for failure to follow instructions on April 18, 2025, after he failed to follow an instruction to go back out and assist a late-returning carrier, whereas Plaintiff was terminated with no prior Letter of Warning for a similar alleged infraction. This disparity further demonstrates discriminatory enforcement of Defendant's disciplinary policies.

19.    Furthermore, Robinson was also issued a Notice of Removal due to the February 3, 2025 events, but his grievance was resolved locally. Because Plaintiff's grievance was escalated to pre-arbitration, she was placed on a seven-day probation period upon her return to work, which remains on her record as a disciplinary action. However, since Robinson's grievance was not escalated to pre-arbitration, he was not placed on probation and does not have remaining discipline on his record. Robinson and Plaintiff were being disciplined for the same events, but Plaintiff received greater disciplinary action than Robinson based on her gender. This unequal treatment constitutes direct evidence of gender-based discrimination.

20.    On May 21, 2025, Plaintiff's grievance was settled in her favor and her employment with Defendant was reinstated. Plaintiff was informed by Business

Agent for Region 9 Eddie Davidson, from the Union, National Association of Letter Carriers, that she was required to return to work no later than May 24, 2025.

21.     When Plaintiff arrived at work on May 24, 2025, Thompson-Ali stated that Plaintiff's employment had not been reinstated and instructed her to go home. Plaintiff complied with this directive, and then immediately called Davidson to report Thompson-Ali's actions. Davidson assured Plaintiff that her employment was reinstated and instructed her to return to work the following business day, Monday May 26, 2025. This conduct further evidences ongoing retaliation and hostility toward Plaintiff following her protected activity.

22.     On May 27, 2025, one day after Plaintiff returned to work, Plaintiff's LLV was rear-ended while she was driving her delivery route. Plaintiff was transported to the Hospital Corporation of America (HCA) Medical Center via ambulance and diagnosed with a spinal injury. Plaintiff immediately reached out to Thompson-Ali to request a CA-16 Authorization for Medical Attention form. This form was required for Plaintiff to initiate the Workers' Compensation process and attend her follow-up appointment the next day. Plaintiff's request was reasonable, urgent, and medically necessary.

23.     Defendant's policy states that the CA-16 form must be provided within four hours of being requested. However, when Plaintiff arrived at the station at 8:00 a.m. on May 28, 2025 to retrieve the form before her appointment, Thompson-Ali

8

refused to procure it. Plaintiff remained on the premises for approximately nine hours waiting for Thompson-Ali to provide the CA-16 form and finally received it around 4:45 p.m., after she had missed her follow-up appointment and waited in pain all day.

24. After being cleared to return to work on July 11, 2025, Plaintiff's doctor, Thien Quach, at ChiMed Rehab completed a CA-17 Light Duty form permitting Plaintiff to work eight hours of light duty per day. Plaintiff remains in her position as a City Carrier but is currently on a temporary light-duty assignment at the station, where she cases mail and prepares delivery routes for other carriers. These tasks are not a separate job, but are integral duties of the City Carrier position, and Plaintiff will remain on this assignment until she is medically cleared to return to full duty.

25. However, to date, Thompson-Ali has not allowed Plaintiff to work a full forty-hour workweek as required by Article 13 of the National Agreement and / or other policy, instead reducing her hours to approximately twenty to twenty-five hours per week. On a near-daily basis, Thompson-Ali sends Plaintiff home after an average of approximately four hours, stating that there is no more work for Plaintiff to perform that day. Plaintiff contends that there is ample work available at the station each day that falls within her light-duty restrictions, but Thompson-Ali

9

refuses to assign such work and instead sends Plaintiff home early. This reduction in hours has severely affected Plaintiff's income and livelihood.

26.     Further, there are open full-time positions that would meet Plaintiff's light-duty restrictions, including positions Defendant has advertised for 204-B Supervisor in Training, yet Defendant has failed and refused to offer Plaintiff placement in any such position. This ongoing reduction in hours constitutes a continuing adverse employment action

27.     Plaintiff has retained the undersigned to represent her interests in this cause and is obligated to pay a fee for these services.  Defendant should be made to pay said fee under the statutes referenced above.

## COUNT I
## SEX DISCRIMINATION

28.     Paragraphs 1 through 27 are re-alleged and incorporated herein by reference.

29.     This is an action against Defendant for discrimination based upon sex brought under 42 U.S.C. §2000e et seq.

30.     Plaintiff has been the victim of discrimination on the basis of Plaintiff's gender in that Plaintiff was treated differently than similarly situated employees of Defendant who are male and has been subject to hostility and poor treatment on the basis, at least in part, of Plaintiff's sex.

31.    Defendant is liable for the differential treatment and hostility towards Plaintiff because it controlled the actions and inactions of the persons making decisions affecting Plaintiff or it knew or should have known of these actions and inactions and failed to take prompt and adequate remedial action or took no action at all to prevent the abuses to Plaintiff.

32.    Furthermore, Defendant knowingly condoned and ratified the differential treatment of Plaintiff as more fully set forth above because it allowed the differential treatment and participated in same.

33.    Defendant's known allowance and ratification of these actions and inactions created, perpetuated and facilitated an abusive and offensive work environment within the meaning of the statutes referenced above.

34.    In essence, the actions of agents of Defendant, which were each condoned and ratified by Defendant, were of a sex-based nature and in violation of the laws set forth herein.

35.    The discrimination complained of herein affected a term, condition, or privilege of Plaintiff's continued employment with Defendant.

36.    The events set forth herein led, at least in part, to Plaintiff's termination on contrived allegations and ongoing actions against her based on her gender since her reinstatement.

11

37.    Defendant's    conduct    and    omissions    constitute    intentional discrimination and unlawful employment practices based upon gender in violation of 42 U.S.C. §2000e et seq..

38.    As a direct and proximate result of Defendant's conduct described above, Plaintiff has suffered emotional distress, mental pain and suffering, past and future pecuniary losses, inconvenience, bodily injury, mental anguish, loss of enjoyment of life and other non-pecuniary losses, along with lost back and front pay, interest on pay, bonuses, and other benefits.    These damages have occurred in the past, are permanent and continuing.    Plaintiff is entitled to injunctive relief.

## COUNT II
## RETALIATION

39.    Paragraphs 1 through 27 are re-alleged and incorporated herein by reference.

40.    This is an action against Defendant for unlawful retaliation after Plaintiff reported unlawful employment practices adversely affecting her under 42 U.S.C. § 2000e et seq.

41.    Defendant is an employer as that term is used under the applicable statutes referenced above.

42.    The foregoing unlawful actions by Defendant were purposeful.

12

43.    Plaintiff voiced opposition to unlawful employment practices during her employment with Defendant and has been the victim of retaliation thereafter.

44.    The events set forth herein have led, at least in part, to adverse actions against Plaintiff.

45.    Plaintiff is a member of a protected class because she reported unlawful employment practices and has been the victim of retaliation thereafter.  There is thus a causal connection between the reporting of the unlawful employment practices and the adverse employment action taken thereafter.

46.    As a direct and proximate result of the foregoing unlawful acts and omissions, Plaintiff has suffered mental anguish, emotional distress, expense, loss of benefits, embarrassment, humiliation, damage to reputation, illness, lost wages, lost opportunities, loss of capacity for the enjoyment of life, and other tangible and intangible damages.  These damages are continuing and are permanent.  Plaintiff is entitled to injunctive/equitable relief.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment against Defendant for the following:

(a)    that process issue and this Court take jurisdiction over this case;

(b)    that this Court grant equitable relief against Defendant under the applicable counts set forth above, mandating Defendant's

13

obedience to the laws enumerated herein and providing other equitable relief to Plaintiff;

(c)   enter judgment against Defendant and for Plaintiff awarding all legally-available general and compensatory damages and economic loss to Plaintiff from Defendant for Defendant's violations of law enumerated herein;

(d)   enter judgment against Defendant and for Plaintiff permanently enjoining Defendant from future violations of law enumerated herein;

(e)   enter judgment against Defendant and for Plaintiff awarding Plaintiff attorney's fees and costs;

(f)   award Plaintiff interest where appropriate; and

(g)   grant such other further relief as being just and proper under the circumstances.

**<u>DEMAND FOR TRIAL BY JURY</u>**

Plaintiff hereby demands a trial by jury on all issues herein that are so triable.

Dated this 6th day of February, 2026.

Respectfully submitted,

/s/ Marie A. Mattox
Marie A. Mattox [FBN 0739685]
MARIE A. MATTOX, P.A.
203 North Gadsden Street
Tallahassee, FL 32301
Telephone: (850) 383-4800
Facsimile:  (850) 383-4801
Marie@mattoxlaw.com
Secondary emails:
marlene@mattoxlaw.com
michelle@mattoxlaw.com
discovery@mattoxlaw.com

ATTORNEYS FOR PLAINTIFF